UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID SCHWARTZ,

      Plaintiff,

v.                            Case No: 2:21-cv-283-SPC-MRM

ADP, INC. and AUTOMATIC
DATA PROCESSING, INC.,

      Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendants ADP, Inc. and Automatic Data Processing, Inc.'s (together "ADP") Motion to Dismiss (Doc. 55). Plaintiff David Schwartz responded (Doc. 56). The Court grants the Motion in part.

## BACKGROUND

This case arises from Schwartz's job with ADP. A few years ago, their relationship went awry. Schwartz alleges ADP has illegal business practices. After he blew the whistle on them, ADP retaliated. They locked him out of his work laptop and iPad, then fired him.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

Later, ADP sued Schwartz in state court for breach of contract and taking trade secrets. Schwartz counterclaimed for wrongful termination. ADP followed with another state action for defamation. Those cases are pending. When the state-court litigation got publicity, ADP hacked into Schwartz's electronic communications and accounts. Now, in federal court, Schwartz brings a host of claims. The operative pleading is the Third Amended Complaint (the "Complaint") (Doc. 50).

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts must accept all well-pled allegations as true and view them most favorably to plaintiff. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

## DISCUSSION

The parties' dispute proceeds in five parts below.

**A. Counts 1 and 7**

First, ADP says Schwartz did not state claims under the Computer Fraud and Abuse Act ("CFAA"). Schwartz responds ADP's "sole argument" revolves around failing to specify what devices it hacked. (Doc. 56 at 3). That's wrong. ADP moves to dismiss for several reasons, including the failure to allege proper damages. Even assuming Schwartz clarified the devices, the Court agrees with ADP on the damages element.

The CFAA punishes computer hacking. *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1290 (S.D. Fla. 2020). Its civil enforcement remedy "has four elements: (1) a defendant intentionally accessed a protected computer; (2) without authorization or exceeding authorized access; and the defendant (3) thereby obtained information; and (4) the plaintiff suffered damage or loss of at least $5,000."[2] *Hall v. Sargeant*, No. 18-80748-CIV-ALTMAN/Reinhart, 2020 WL 1536435, at *28 (S.D. Fla. Mar. 30, 2020); *see also Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1313 (S.D. Fla. 2018) (parsing dense statute to cobble together this claim). To meet the statutory minimum, damages must satisfy the definition of "loss." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1173 (11th Cir. 2017); 18 U.S.C. § 1030(c)(4)(A)(i)(I).

---

[2] *But see Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 439-40 (2d Cir. 2004) (explaining "damage" is not relevant to some CFAA claims).

> The CFAA recognizes two losses:
>
>> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, *and* any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11) (emphasis added). So the CFAA allows recovery of (1) "direct costs of responding to the violation" and (2) "consequential damages resulting from interruption of service." *Carmicle*, 846 F.3d at 1174. At bottom, some combination of those losses must meet the $5,000 minimum. *Id.* at 1173.

ADP is correct the Complaint only makes the conclusory allegation losses reached that amount. While Schwartz alleges ADP hacked attorney-client communications and personal information valued at over $5,000, those are not "losses" under the CFAA. *Daughtry v. Atlanta Crane & Automated Handling, Inc.*, No. 2:10-cv-1371-AKK, 2012 WL 13024455, at *8 (N.D. Ala. Jan. 12, 2012) ("The CFAA's definition of 'loss' does *not* include lost revenue from the possible misappropriation of 'stolen' information."); *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1345 (M.D. Fla. 2014). Again, losses are the costs associated with remedying a CFAA violation and consequential damages from lost service. *Carmicle*, 846 F.3d at 1174; 18 U.S.C. § 1030(e)(11). Yet Schwartz offers no facts from which anyone could infer he suffered $5,000 of those losses. With just conclusory allegations on the damages element, the claim must fail.

*Oce N. Am., Inc. v. MCS Servs., Inc.*, 748 F. Supp. 2d 481, 488 (D. Md. 2010); *Psychas v. Dist. Dep't of Transp.*, No. 18-0081 (ABJ), 2019 WL 4644503, at *8-11 (D.D.C. Sept. 24, 2019) (surveying cases and explaining limitations on "losses").[3]

So the Court dismisses the CFAA claims.

## B. Counts 4 and 10

Second, ADP seeks to dismiss both claims under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), which amended the Employee Retirement Income Security Act ("ERISA"). According to Schwartz, ADP did not give him notice of his right to coverage. Without knowing about COBRA benefits, his family lost their insurance. So Schwartz and his wife decided not to have a second child. Like before, the Court concludes he doesn't have standing.[4] (Doc. 36) (the "Order").

---

[3] *See also Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-20966-CIV-ALTONAGA/Goodman, 2020 WL 4003494, at *7 (S.D. Fla. July 15, 2020); *New S. Equip. Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 531 (S.D. Miss. 2013); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010); *Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1129 (N.D. Fla. 2019); *CareersUSA, Inc. v. Guerrero*, No. 14-80096-Civ-Scola, 2014 WL 12862259, at *3 (S.D. Fla. Aug. 25, 2014); *Raju v. Murphy*, No. 3:17-CV-357-CWR-FKB, 2019 WL 982863, at *8 (S.D. Miss. Feb. 28, 2019); *Andersen v. Fenn*, No. 1:20-cv-00553-JFR, 2020 WL 11626069, at *1 (D.N.M. Sept. 25, 2020); *Bashaw v. Johnson*, No. 11-2693-JWL, 2012 WL 1623483, at *3 (D. Kan. May 9, 2012); *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 522 (E.D. La. 2018).

[4] In this context, the term "standing" is somewhat misleading. Whether Schwartz has statutory standing under ERISA does not implicate subject-matter jurisdiction; the inquiry is whether he has a cause of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). So the statutory standing question follows Rule 12(b)(6), not Rule 12(b)(1). *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1274 n.6 (11th Cir. 2018); *Griffin v. S. Co. Servs., Inc.*, 635 F. App'x 789, 792 (11th Cir. 2015).

The Order emphasized Schwartz must be a participant or beneficiary to have standing. But the Complaint did not fix the central defect: pleading Schwartz meets one statutory definition. *See* 29 U.S.C. § 1002(7)-(8) (demanding plaintiff be someone "who is or may become eligible" or "entitled to" benefits under an ERISA plan). On repleading, Schwartz sprinkled in a few conclusory statements. Yet he again sues for only statutory penalties and (maybe) consequential damages without addressing his expired COBRA benefits. So he still does not pursue COBRA or other ERISA benefits.

Most cases Schwartz relies on are easily distinguished. For instance, he says *Christopher v. Mobil Oil Corp.* helps his cause. 950 F.2d 1209 (5th Cir. 1992). Not so. In *Christopher*, plaintiff sued because defendant discharged him for exercising an ERISA right and to prevent benefits from vesting. But for that defendant's conduct, plaintiff would have standing. This case differs. Schwartz was a participant or beneficiary with standing in the past. But he isn't anymore. Unlike *Christopher*, the Complaint does not allege ADP fired Schwartz to deprive him of COBRA or other ERISA benefits (nor could he). And any COBRA rights Schwartz had expired long ago—whether or not ADP provided notice. *See* 29 U.S.C. § 1162(2)(A); *Geissal v. Moore Med. Corp.*, 524 U.S. 74, 80 (1998). So ADP's conduct could not be the but-for cause of Schwartz nonentitlement to COBRA at the time of suit.

6

Other cases Schwartz cites are also unavailing. In those situations, plaintiffs were still entitled to ERISA plan benefits. So unlike Schwartz, they had standing.[5] As much as Schwartz relies on a single, fourteen-year-old case from Illinois, the Court is unpersuaded. *Enenstein v. Eagle Ins. Agency, Inc.*, No. 06 C 627, 2007 WL 2410098 (N.D. Ill. Aug. 23, 2007). There, it was unclear whether plaintiff's COBRA rights expired presuit. On the other hand, not even Schwartz alleges he still may have COBRA coverage. Instead, he doubles down on the theory to get damages by stating bare legal conclusions about a "colorable claim" to unidentified benefits. (Doc. 50 at 36, 48).

Again, all Schwartz seeks are statutory penalties and (possibly) consequential damages from not having another baby. Neither are benefits. So this is not a circumstance where Schwartz sues for ERISA benefits he lost because of ADP's failure to give COBRA notice. *See Hager v. DBG Partners, Inc.*, 903 F.3d 460 (5th Cir. 2018) (finding standing in suit over reimbursed medical expenses when defendant did not notify plaintiff of terminated COBRA benefits). Because he does not identify or pursue a single ERISA benefit to which he is (or could be) entitled, Schwartz does not have statutory

---

[5] *See Bridges v. Am. Elec. Power Co.*, 498 F.3d 442, 444-45 (6th Cir. 2007) (plaintiff suing to recover reduced value of benefits was participant); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 667-68 (2d Cir. 1994) (plan participant could sue over increased benefits he could have received); *Maurer v. R.L. Fortney Mgmt., Inc.*, No. 1:08-CV-1199, 2008 WL 4058865, at *2-3 (N.D. Ohio Aug. 26, 2008) (plaintiff who received benefits had standing in suit over reimbursement of those funds); *see also Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 561 (6th Cir. 2017) (plaintiffs suing for retirement benefits to which they were entitled had standing).

standing. (Doc. 36 at 11) (collecting cases); *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) ("Participants can lose standing to sue if, despite their having suffered an alleged ERISA violation, their participant status has been terminated before suit is filed."); *Harzewski v. Guiant Corp.*, 489 F.3d 799, 805 (7th Cir. 2007) ("The statute authorizes suits for benefits, just not for damages separate from those benefits. . . . Nor can [plaintiff] sue to obtain the statutory penalty for failing to provide plan documents to a participant, since that penalty is not a benefit either.").[6]

So the Court dismisses the ERISA claims.

**C. Counts 6 and 12**

Third, ADP wants to dismiss Schwartz's claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

FDUTPA is "construed liberally to . . . protect the consuming public and legitimate business enterprises . . . in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). Unsurprisingly then, this scheme bars "[u]nfair methods of competition, unconscionable acts or practices, and unfair or

---

[6] *See also Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan*, 942 F.2d 1190, 1193 (7th Cir. 1991) (Plaintiff "is not seeking a benefit from an employee benefit plan. She is seeking damages under a penalty provision."); *Orth v. Wis. State Emps. Union Couns. 24*, 546 F.3d 868, 874 (7th Cir. 2008); *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1028 (9th Cir. 2009) ("A plaintiff seeking extra-contractual damages, on the other hand, does not have standing."); *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1132 (5th Cir. 1996) ("Status as a participant is simply a threshold requirement a plaintiff must meet before he can request penalties.").

deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The elements of the claim follow: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). What's more, FDUTPA only "applies to unfair or deceptive acts or practices in trade or commerce." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019).[7]

"Trade or commerce" means "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property . . . or thing of value." Fla. Stat. § 501.203(8). Like the Order said, this is a "broad" definition. (Doc. 36 at 13). Yet—as before—it is still unclear how the alleged deceptive or unfair conduct fell within trade or commerce. The FDUTPA allegations are limited to ADP's hacking of Schwartz's devices and failing to provide employment papers (like COBRA notice). But again, there is no explanation how that has anything to do with trade or commerce. And on its face, hacking a former employee's devices to gain an advantage in litigation with that employee is not "advertising,

---

[7] Schwartz seems to think the Order held only consumers can sue under FDUPTA. Not so. The Court recognized "FDUTPA is no longer limited to consumers." (Doc. 36 at 13). The Order thus held the allegations were "unclear how Schwartz was a *person* misled," (Doc. 36 at 13) (emphasis added)—not a *consumer* misled.

9

soliciting, providing, offering, or distributing" anything of value. *See* Fla. Stat. § 501.203(8).[8]

Schwartz mainly relies on cases in which competing businesses sued under FDUTPA. But there is no allegation Schwartz operates a competing business in trade or commerce. Nor is there any other inkling about how ADP's conduct was commercial. Rather, the FDUTPA claims "focus on the bad end to the parties' employment relationship and current litigation." (Doc. 36 at 13). Because the Complaint doesn't allege ADP's conduct was in trade or commerce, it fails to state FDUTPA claims. *See, e.g.*, *AMG Trade & Distrib., LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403, 408 (11th Cir. 2020).

So the Court dismisses the FDUTPA claims.

**D. Leave to Amend**

Fourth, Schwartz (through briefing) impliedly asks to amend any faulty claims. The Court denies the request for several reasons.

To start, the request is procedurally flawed. Parties seeking leave to amend must do so by separate motion. Fed. R. Civ. P. 7(b)(1) ("A request for a

---

[8] *See also Baker v. Baptist Hosp., Inc.*, 115 So. 3d 1123, 1125 (Fla. Dist. Ct. App. 2013) (A "pursuit of legal remedies does not fall within the definition of 'trade or commerce.'"); *Kurlander v. Kaplan*, No. 8:19-cv-00742-T-02AEP, 2019 WL 3944338, at *8 (M.D. Fla. Aug. 21, 2019) ("[C]onduct by a law firm or lawyers during the provision of legal services is not 'trade or commerce.'"); *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1374-76 (S.D. Fla. 2010) (sending demand letter was not conduct in trade or commerce); *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1321-22 (S.D. Fla. 2012) (holding debt collection calls were not in trade or commerce); *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1220 (S.D. Fla. 2020) (holding legal services are not trade or commerce).

10

court order must be made by motion."); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). Besides that procedural hiccup, there are substantive grounds to refuse another amendment.

Schwartz contends if required to amend, he "would clarify that the acts of hacking [his] computer were part of the overall plan to mislead consumers about the fraudulent ADP sales practices." (Doc. 56 at 7). But that clarifies nothing. While the Complaint makes various allegations about ADP's business practices, the FDUTPA claims are limited to ADP's conduct toward Schwartz (mostly hacking his devices and accounts). So Schwartz wants to make new allegations. In response to the last motion to dismiss, Schwartz offered the same empty-handed promise that amendment would explain the FDUTPA theory. (Doc. 46 at 6-9). But the Complaint didn't follow through. By this point, the Court need not allow more time to state any FDUTPA claims.[9] *E.g.*, *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

Buttressing this conclusion is the complete failure to explain how amendment could even state a claim. According to Schwartz, he "requires discovery to complete the factual development about how this hacking played

---

[9] Schwartz's argument about amendment is mostly limited to his FDUTPA claims. As it relates to his other causes of action, this analysis applies equally.

into ADP's fraud." (Doc. 56 at 8). All the same, he says just one more chance is all he needs to "provide an explanation of how he believes the hacking occurred, its motivation, and how it is connected to his whistleblowing activities." (Doc. 56 at 8). Yet this does not "set forth the substance of the proposed amendment." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006). Rather, Schwartz again promises he can explain his theory without disclosing what it might be. That request falls short.

Even leaving this aside, Schwartz's request comes too late. The deadline to amend pleadings passed on November 8—one day before Schwartz responded. When leave to amend is sought "after the scheduling order's deadline," plaintiff "must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Id.* Schwartz's unexplained failure to make timely, sufficient allegations is not diligence.

What's more, if the more lenient Rule 15(a) standard applied, Schwartz request would be undue delay and likely prejudicial. *See Blackburn v. Shire US Inc.*, No. 20-12258, 2021 WL 5563732, at *4-5 (11th Cir. Nov. 29, 2021). He apparently knew of the new facts to support theories months ago. (Doc. 46 at 2, 8-9, 15). And there is no excuse for why necessary allegations would be

withheld. *See Tampa Bay Water v. HDR Eng'g*, 731 F.3d 1171, 1186 (11th Cir. 2013) ("A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings. . . . [P]rejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery."), *abrogated on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333 (11th Cir. 2017).

Finally, the case history militates against amendment. In April, when ADP first sought dismissal, Schwartz amended as a matter of course. Then, ADP moved to dismiss again—a motion the Order mostly granted—and Schwartz amended. Finally, the Court granted ADP's third motion to dismiss on shotgun pleading grounds, allowing Schwartz to replead. Schwartz had three prior opportunities to amend, and this is ADP's fourth motion to dismiss.[10] Where relevant, all motions made the same argument. Simply put, Schwartz had more than enough chances to respond to ADP's contentions and make any allegations necessary to state his claims.

One last point. Schwartz says ADP's request to dismiss his claims with prejudice (i.e., without leave to amend) is "uninformed legal argument." (Doc. 56 at 2). According to Schwartz, "there is no limitation on the number of times

---

[10] It's actually ADP's fifth motion. The third was denied for Local Rule 3.01(g) violations.

a Plaintiff may amend." (Doc. 56 at 2). He's right in a general sense: the Rules impose no numerical cap on amendments, instead entrusting judges with discretion on the issue. Yet that does not help Schwartz's cause as never-ending amendment is taboo. Supporting his request, Schwartz cites a nonbinding case. *Perotti v. Serby*, 786 F. App'x 809 (10th Cir. 2019). It does not move the needle. There, it was not error to refuse a pro se prisoner's request to amend a sixth time and add a claim plaintiff knew about when suing. Schwartz—a litigant with counsel—failed to correct the pleading deficiencies despite three amendments over the last eight months. No law (at least none of which the Court is aware) requires granting a represented party another crack at stating a claim under these circumstances. Nor does the Court find one warranted.

So the Court denies Schwartz's request to amend.

**E. Fees and Costs**

And fifth, ADP moves for a decision on its entitlement to attorney's fees and costs for the ERISA and FDUTPA claims. A party may move for an entitlement decision "[w]ithin fourteen days after judgment." Local Rule 7.01(b). This case is still at the pleading stage without judgment entered. So the request is premature. *See also* Fla. Stat. § 501.2105(1) (permitting fees "after judgment"); *Hardt v. Reliance Standard Life Ins.*, 560 U.S. 242, 255 (2010) (The "fees claimant must show some degree of success on the merits

14

before a court may award attorney's fees under § 1132(g)(1)." (cleaned up)). What's more, the request is not made by a separate motion. Nor does it estimate the amount sought. Local Rule 7.01 requires both.

So the Court denies the request without prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 55) is **GRANTED in part**.

    a. Counts 1, 4, 6, 7, 10, and 12 are **DISMISSED with prejudice**.

    b. The balance of the Motion is **DENIED**.

2. Defendants must **ANSWER** the Third Amended Verified Complaint (Doc. 50) **on or before December 17, 2021**.

**DONE** and **ORDERED** in Fort Myers, Florida on December 3, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

15