UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID SCHWARTZ,

     Plaintiff,

v.                                               Case No.:  2:21-cv-283-SPC-KCD

ADP, INC. and AUTOMATIC
DATA PROCESSING, INC.,

     Defendants.

_____/

## REPORT & RECOMMENDATION

     Plaintiff David Schwartz worked for ADP, Inc. for three years selling IRAs. The relationship started out well, but at some point, Schwartz became concerned about ADP's business activities that he believed violated the law. His concerns were allegedly ignored, which led Schwartz to take his complaints to the government. ADP reacted by terminating Schwartz for the things he reported. But even after he was fired, ADP allegedly continued to monitor him by hacking his electronic communications and accounts. Refusing to be silenced, Schwartz filed this action against ADP and Automatic Data Processing, Inc. (collectively, "ADP").

     Schwartz's claims ultimately failed—some on a motion to dismiss, and the remainder by summary judgment. (*See* Docs. 57, 133.) Having won on the merits, ADP now seeks statutory attorney's fees for two claims. (Docs. 141,

150). ADP also asks for sanctions against Schwartz's counsel under 28 U.S.C. § 1927.[1] (Doc. 137.) ADP estimates it expended $58,000 on the claims where it can collect fees, and $222,000 under § 1927 based on opposing counsel's conduct that multiplied the proceedings. (Doc. 151.)

For the reasons below, the Court recommends denying ADP's request for attorney's fees. As for sanctions under § 1927, the Court can address ADP's motion by order, and it is denied.

## I. Background

ADP's request for six-figures in sanctions under § 1927 gives it away— this case was contentious. Over the last five years, two state court lawsuits (besides this case) have stemmed from Schwartz's employment with ADP. In those cases, ADP alleged breach of contract, misappropriation of trade secrets, and defamation for a website Schwartz created called "adpfraud.com." Both state cases remain pending.

Once the state-court litigation got publicity, Schwartz thought ADP hacked his Apple devices to access his electronic communications. That prompted Schwartz to file this suit alleging a host of claims. Not surprisingly, the allegations (and resulting publicity) triggered ill will, which, in turn, led to

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

attacks and insults, which, in turn, generated only more litigation. To illustrate, one of the pending state court cases now has *1127 docket entries*.

The procedural history of this suit and its companion state cases could fill a novel. But a blow-by-blow is not needed to assess the pending motions. These are the essential facts to get us started.

Schwartz's first complaint contained these claims:

1) Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030

2) Violation of Stored Communications Act, 18 U.S.C. § 2701

3) Violation of Wiretap Act, 18 U.S.C. § 2520

4) Employee Retirement Income Security Act of 1974 ("ERISA")

5) Violation of Florida's Security of Communications Law, Fla. Stat. § 934

6) Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 ("FDUTPA")

(Doc. 1.)[2]  ADP moved to dismiss, and Schwartz amended as a matter of course. Apart from a few formatting changes and additional facts, the second complaint was substantively identical to the first. (Doc. 16.)

ADP again moved to dismiss, arguing Schwartz could not prove any of his statutory claims. (Doc. 19.) The Court sided with Schwartz under the Stored Communications Act (Count 2), concluding the second complaint

---

[2] There are actually twelve claims, as Schwartz brought identical causes of action against each corporate defendant. Because the Court has grouped the defendants together for present purposes, it will do the same for the claims.

"properly alleges ADP accessed [his Apple accounts] to collect . . . communications (most notably those from his lawyer)." (Doc. 36 at 6.) But the Court rejected the rest of Schwartz's claims for one reason or another. Because ADP is seeking fees under ERISA and FDUTPA, a deeper dive into these allegations is warranted.

Schwartz's ERISA claim alleged that ADP did not provide him with the required notice about COBRA insurance after termination. This, in turn, led Schwartz to be uninsured and put off having a baby. The Court was satisfied these facts pled an ERISA violation with consequential damages. (Doc. 36 at 12.) Still, Schwartz's claim fell short because "ERISA does not provide a cause of action to former participants" and "[t]he Complaint does not allege [he] is a participant with standing to sue for ERISA violations." (*Id.* at 11-12.)

As for FDUTPA, the Court explained that it requires "a deceptive act or unfair practice" that "was likely to deceive a consumer acting reasonably in the same circumstances." (Doc. 36 at 13.) But the amended complaint did not explain how "Schwartz was a person misled by ADP's deceptive or unfair conduct in trade or commerce." (*Id.*) Rather, "the allegations focus on the bad end to the parties' employment relationship and current litigation." (*Id.*) This disconnect left the Court unconvinced that FDUTPA applied. (*Id.* at 14.)

Schwartz was invited to amend the complaint, and he took the Court up on its offer. (*See* Doc. 41.) The new complaint mirrored its predecessor,

4

including violations of ERISA and FDUTPA. But it was procedurally different in a significant way—it was "a textbook shotgun pleading" that incorporated each claim into the next. (Doc. 48 at 3.) The Court thus struck the third complaint and again told Schwartz to amend.

That brings us to the final pleading—Schwartz's fourth complaint. (Doc. 50.) Sticking to the playbook, he alleged the same six claims with additional facts presumptively designed to overcome the Court's concerns. ADP also stayed consistent, moving to dismiss. (Doc. 55.) This time, however, ADP chose not to target the computer and communications-related claims (Counts 2, 3, and 5). This effectively let Schwartz's hacking theory proceed to discovery.

ADP prevailed on its motion to dismiss, with the Court agreeing that Schwartz continued to pursue theories that did not apply to the facts. (Doc. 57.) Regarding Schwartz's FDUTPA claim, the Court again clarified that this statute "applies to unfair or deceptive acts or practices in trade or commerce." (*Id.* at 9.) "Yet—as before—the [complaint advances only allegations] that [have nothing] to do with trade or commerce." (*Id.*)

As for ERISA, the Court explained that Schwartz did not fix his standing problem: "On repleading, Schwartz sprinkled in a few conclusory statements. Yet he again sues for only statutory penalties and (maybe) consequential damages without addressing his expired COBRA benefits." (*Id.* at 6.) The Court denied leave to amend and sent the parties forward with discovery. (*Id.*)

Discovery came with its own set of issues that the Court need not elaborate on here. Suffice it to say that cooler heads did not prevail. The parties' discovery disputes are discussed to the extent relevant below. To briefly recap, after several months and three motions to dismiss, Schwartz's case was whittled down to a few claims centering on allegations that ADP hacked his Apple devices and accessed his communications.

ADP was apparently eager to get the case resolved, as it moved for summary judgment before the discovery cutoff. (Doc. 91.) Rather than defend his hacking claims, Schwartz asked the Court to defer ruling until discovery closed. He claimed to have just received written discovery from ADP. Thus, according to Schwartz, more time was needed to take depositions and probe a host of issues about ADP's internal procedures and "what information ADP has improperly intercepted." (Doc. 103 at 1-3.) The Court agreed that "summary judgment [was] premature," giving Schwartz "two months to complete any discovery necessary to oppose an inevitable renewed motion for summary judgment." (Doc. 107 at 3.)

ADP makes a big deal about what happened next. Rather than pursuing further discovery before the cutoff, Schwartz did almost nothing. He apparently took one deposition. (Doc. 137 at 2.) According to ADP, Schwartz and his attorney were keeping the case alive "for no reason other than to vexatiously multiply the proceedings and incur expense." (*Id.*)

Finally, we arrive at the penultimate act. Keeping with the Court's premonition, ADP renewed its motion for summary judgment. (*See* Doc. 125.) Armed with an affidavit from Apple and expert testimony saying that ADP did not hack Schwartz's Apple devices as alleged, ADP claimed that no jury could find in his favor. As described by ADP, "Schwartz has no summary judgment evidence to prove his claims that [it] violated the Statutes." (*Id.* at 3.)

Schwartz offered three pieces of evidence that he claimed created an issue of fact about ADP's conduct. (Doc. 129.) First, Schwartz proffered deposition testimony from ADP's corporate representative. Among other things, this witness testified that Schwartz's Apple devices "are still tied together and potentially traversing the ADP network." (*Id.* at 9.) The witness also confirmed that there had been no investigation into whether Schwartz's iPhone was connected to ADP's network. (*Id.* at 10.)

Second, Swartz offered the deposition of Nathaniel Webb, a former co-worker at ADP. (Doc. 129 at 14.) Sometime after his termination, Schwartz exchanged several text messages with Webb. ADP later used those text messages as an exhibit in one of the state cases. Webb testified that he only provided those text messages to ADP a week or two before his deposition. He could not explain how ADP produced the messages nearly a year earlier. (*Id.*)

Eight months after Webb's deposition, however, he executed an errata sheet in which he changed his testimony that he had never shared Schwartz's

7

text message with anyone at ADP. He now stated that he shared the text message with a supervisor in October 2019, which was before ADP used them as an exhibit. While conceding Webb's new testimony, Schwartz asked the Court to view it as a credibility issue best left for the jury. (Doc. 129 at 14-16.) This was especially appropriate, according to Schwartz, because the errata sheet offered no reason for the change and Webb remained employed at ADP. (*Id*.)

Finally, Schwartz proffered a report he downloaded from Apple. (*See* Doc. 50-18.) It includes several sections that, according to Schwartz, show when ADP accessed his personal devices. (Doc. 129 at 17.) Schwartz also maintained that ADP "ha[d] acknowledged in filings in this case that [the report] may show some sort of connection between Apple-ADP servers." (*Id*.)

The Court sided with ADP, concluding Schwartz did not create a genuine issue of material fact for trial. (Doc. 133.) The Court discounted Schwartz's text-message evidence because Webb had recanted. (*Id*. at 12.) And as for the report from Apple, Schwartz "provided no explanation or expert testimony to contextualize this data." (*Id*.) At best, then, the report showed "that IP addresses allegedly associated with ADP have at some point and in some capacity been linked with Schwartz's Apple ID." (*Id*.) Boiled down, everything from Schwartz amounted to "a scintilla of evidence," which "will not do." (*Id*.)

Schwartz did not appeal, so the Court entered judgment against him. The present motions followed. As mentioned, ADP seeks statutory attorney's fees for prevailing on the ERISA and FDUTPA claims. (Docs. 141, 150.) And keeping on theme with the contentious nature of the case, ADP also demands sanctions under 28 U.S.C. § 1927. (Doc. 137.)

## II. Law & Analysis

This district follows a bifurcated process for awarding post-judgment attorney's fees. (*See* Local Rule 7.01.) Under Rule 7.01, the party seeking fees must first move for a determination of entitlement. If successful, the applicant then moves to justify the amount sought. We are now at the first step.

Before jumping into the merits, however, a procedural issue needs attention. ADP requests an evidentiary hearing on the fee motions. (Doc. 162.) An evidentiary hearing could be necessary "where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302-03 (11th Cir. 1988). ADP says an evidentiary hearing is needed to "allow this Court an opportunity to hear evidence as to bad faith as well as make a determination whether the Plaintiff, Plaintiff's counsel, or both were guilty of bad faith." (Doc. 162 at 4.) ADP also says a hearing will give it "the opportunity to fully address the various factors and confront Plaintiff's legal defenses." (Doc. 162 at 4.)

The Court sees no reason to hold a hearing. ADP identifies no facts that need to be established beyond what is already accessible. The extensive record, the Court's two-year familiarity with the case, and the hundreds of pages of briefing and exhibits submitted in support of the fee requests provide the Court with all the material needed to decide the fee issue. Thus, ADP's request is denied.

### A. Sanctions Under § 1927

The Court starts with the most contentious issue. ADP seeks sanctions under 28 U.S.C. § 1927 against Schwartz's counsel, Robert Goodman, and his law firm. (Doc. 137.) A magistrate judge has the authority to dispose of a § 1927 motion as a non-dispositive matter. *Jallali v. U.S. Funds*, 578 F. App'x 965, 965 n.1 (11th Cir. 2014); *see also Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 75 (S.D.N.Y. 1991); *Collar v. Abalux, Inc.*, No. 16-20872-CIV, 2018 WL 3328682, at *14 (S.D. Fla. July 5, 2018). Therefore, this portion (and only this portion) will be handled by order rather than report and recommendation. The order is included here because it provides context for the statutory fee requests addressed below.

Under § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[A] district court's authority to

issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as [its] authority to issue a sanctions order under its inherent power." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

Despite its apparent breadth, § 1927 is construed strictly rather than as a "catch-all" provision for sanctioning objectionable conduct. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997). To issue sanctions under § 1927, three elements must be present: (1) the attorney engaged in "unreasonable and vexatious" conduct; (2) the conduct "multiplie[d] the proceedings"; and (3) the sanction must bear a financial nexus to the excess proceedings. *Id.* at 1396.

The line between zealous advocacy and vexatious conduct can often be hard to draw. For that reason, the statute imposes a "high standard" that requires the movant to make an objective showing that the other side acted in bad faith. *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). While evidence of subjective bad faith can certainly be relevant, the test is ultimately objective. Sanctions may issue when it is shown the other side engaged in behavior that "grossly deviates from reasonable conduct." *Id.*

It bears repeating that bad faith is a high bar. *See Caiazza v. Marceno*, No. 2:18-cv-784-SPC-MRM, 2021 WL 1193166, *1 (M.D. Fla. Mar. 30, 2021). An attorney acts in bad faith when he "knowingly or recklessly pursues a

frivolous claim," or if he "argues a meritorious claim for the purpose of harassing an opponent." *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1340 (11th Cir. 2018); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017). And if not obvious by this point, § 1927 requires "more than a lack of merit." *Caiazza*, 2021 WL 1193166, *1. "[A]ttorneys should not generally be required to risk personal liability merely for acting in a representational capacity or for seeking to place a client in a more favorable litigation posture." *Peer v. Liberty Life Assurance Co. of Boston*, 992 F.3d 1258, 1265 (11th Cir. 2021).

ADP contends that Attorney Goodman's bad-faith conduct continued through all phases of the case. As an attorney admitted to this Court, Attorney Goodman acknowledges that he is familiar with § 1927. *See* Local Rule 2.01(b)(1)(C). ADP's arguments are addressed in turn.

### 1. Needless Amendments and Dismissal Briefing

ADP starts by claiming Attorney Goodman employed a "frivolous pleading strategy." Attorney Goodman's four attempts at pleading a proper complaint, ADP insists, led to eight needless months of litigation. (Doc. 137 at 11.)

There is little doubt that the pleadings in this case could have been streamlined. Attorney Goodman brought claims that did not align with the facts. Take, for example, FDUTPA. The statute targets "unfair or deceptive

12

acts or practices in trade or commerce." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019). Yet, as this Court told Attorney Goodman, the deceptive and unfair conduct attributed to ADP did not "ha[ve] anything to do with trade or commerce." (Doc. 57 at 9.)

But it is important to remember what § 1927 is designed to curb. It targets egregious behavior. Litigation choices, even ones that seem questionable in hindsight, must "grossly deviate" from the norm. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1240 (11th Cir. 2007). Attorney Goodman's conduct, although leaving much to be desired, doesn't clear that bar.

Again, take the FDUTPA claim. It was undoubtedly meritless. But "[s]omething more than a lack of merit is required for § 1927 sanctions or they would be due in every case." *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001). Where a FDUTPA claim begins and ends is not entirely clear under Florida law. *See, e.g., Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1350 (S.D. Fla. 2009); *Buckley v. Moore*, No. 20-CIV-61023-RAR, 2021 WL 3173185, at *9 (S.D. Fla. July 26, 2021); *Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *11 (S.D. Fla. June 30, 2022). The statute sometimes seems to operate as a backstop to hold corporate defendants liable for fraudulent conduct. *See, e.g., Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, No. 0:15-CV-21038-KMM, 2016 WL 11783290, at *9 (S.D. Fla. Aug.

25, 2016) (FDUTPA claim brought in trademark context). Given the imprecise treatment of FDUTPA, the Court cannot say Attorney Goodman was "unreasonable and vexatious" by hoping to secure his client's rights under the statute. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). As one court aptly put it, § 1927 should not be used to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Mone v. Comm'r*, 774 F.2d 570, 574 (2d Cir. 1985).

It is also important to remember that ADP declined to challenge several claims after the initial complaint. Thus, this is not a case in which Attorney Goodman had no footing to be in court—the pleadings presented a valid claim rather quickly. *See Smartt v. First Union Nat'l Bank*, 245 F. Supp. 2d 1229, 1235 (M.D. Fla. 2003) ("Section 1927 should be exercised only in instances of a serious and studied disregard for the orderly processes of justice.").

At bottom, the Court has reviewed all versions of the complaint and orders of dismissal, and after doing so, does not find that Attorney Goodman engaged in bad faith. Section 1927 does not empower this Court to fine an attorney for poor lawyering or even misconduct. "Bad faith is distinct from poor advocacy." *Cervantes Orchards & Vineyards, LLC v. Deere & Co.*, No. 1:14-CV-3125-RMP, 2016 WL 7650641, at *2 (E.D. Wash. Mar. 1, 2016).

### 2. Discovery Avoidance and Compulsion

ADP next argues that Attorney Goodman employed a "discovery strategy" to delay and shroud his lack of evidence to support Schwartz's hacking claims. ADP details a repeated cycle of discovery abuses by Attorney Goodman in which ADP would serve discovery requests, defense counsel would ask for better (or any) responses, which would lead to an amendment or motion to compel, at which point Attorney Goodman might choose to amend his responses again. (Doc. 137 at 12-17.)

Attorney Goodman responds that any discovery abuses should have been handled by discovery motions. (Doc. 153 at 6.) And when discovery disputes did make it to Court, sanctions were not award. (*Id.*)

Attorney Goodman has a point. "Sanctions or other remedies for discovery abuse are ordinarily to be sought under Rules 26 and 37 . . . rather than 28 U.S.C. § 1927." *Corwin v. Walt Disney World Co.*, No. 6:02-CV-1377-ORL-19-KRS, 2008 WL 754697, at *16 (M.D. Fla. Mar. 18, 2008). In any event, the Court is not convinced that Attorney Goodman's conduct was so egregious as to be vexatious under § 1927's high standard. The Court declined to award sanctions in connection with the discovery motions it addressed. And there was at least some cooperation. (*See* Doc. 79.) ADP also withdrew at least one motion for sanctions during discovery. (*See* Doc. 122.) While the record does suggest Attorney Goodman made discovery cumbersome, that is not enough. *Cf.*

*Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1541 (11th Cir. 1993) (upholding sanctions where counsel participated in a discovery cover-up, created unnecessary delay, and increased both the cost of litigation and the burden on the court).

The sluggish cycle of discovery alleged here is, unfortunately, fairly commonplace in employment-related litigation. And ADP is not blameless for what resulted. Rather than alert the Court to Attorney Goodman's conduct during discovery so it could be addressed, ADP largely sat on its hands. ADP's inaction buttresses its current accusations. Against this backdrop, and considering § 1927's high bar, the Court declines to impose sanctions for Attorney Goodman's discovery conduct. *See, e.g.*, *Doria v. Class Action Servs., LLC*, 261 F.R.D. 678, 687 (S.D. Fla. 2009) (declining § 1927 sanctions while conceding that counsel's "actions . . . certainly did not exhibit the collegiality or professionalism expected of attorneys").

### 3. Summary Judgment

ADP says that, in the end, Attorney Goodman had the same evidence as he did at the beginning (none) and sought to hide the lack of evidence throughout the case until it was revealed at the summary judgment stage. And rather than retreat from this frivolous lawsuit, Attorney Goodman pushed on through to summary judgment, knowing he lacked evidence to support the claims. (Doc. 137 at 12.)

As mentioned, something more than lack of merit is required to trigger § 1927. Thus, the fact that Schwartz lost at summary judgment is not determinative. *See Caiazza*, 2021 WL 1193166, *1; *Howse ex rel. U.S. v. Planned Parenthood Fed'n of Am.*, No. 8:12-CV-2519-T-17AEP, 2013 WL 3808211, at *3 (M.D. Fla. July 22, 2013) ("Not all unsuccessful claims are frivolous.").

ADP stresses that, after asking the Court for more discovery before summary judgment, Attorney Goodman did essentially nothing. (Doc. 137 at 18.) Among other things, Attorney Goodman did not secure an expert or seek discovery about the Apple report that was the cornerstone of his hacking allegations. Considering "Apple appears 199 times" in the final complaint, ADP proclaims "it is hard to fathom that [Attorney Goodman] never sought or presented evidence from that company." (*Id.* at 19.)

It's obvious in hindsight that Attorney Goodman should have done more to shore up Schwartz's claims. But the Court cannot accept ADP's position that this amounts to sanctionable conduct. This is not a case, as ADP argues, where Attorney Goodman had no evidence. He had Webb's testimony about the text messages, the Apple report, and ADP's corporate rep deposition. While not enough in the end, these facts can at least support an inference that ADP accessed Schwartz's communications. Here's how: the Apple report (although admittedly difficult to read) does show ADP servers connecting to Schwartz's

devices in some capacity. When compounded with Webb's testimony that he did not provide Schwartz's text messages to ADP, a fact-finder could infer ADP otherwise acquired them surreptitiously. Webb later recanted his testimony, but it was not unreasonable for Attorney Goodman to ask the Court to look past that considering Webb's continued relationship to ADP.

Declining to pursue further discovery when given the opportunity ultimately doomed Schwartz's claims. Given the evidence above, however, there is at least an arguable strategic reason for not doing so—Attorney Goodman may have thought they had enough. *See, e.g.*, *Toste v. Beach Club at Fontaineblaeu Park Condo. Ass'n, Inc.*, No. 1:20-CV-23771-KMM, 2022 WL 18704842, at *5 (S.D. Fla. Sept. 12, 2022) (noting that sanctions are generally not appropriate for failed or even unwise litigation strategies). ADP's suggestion that Attorney Goodman was required to pursue evidence from Apple or hire an expert also fails to consider economic reality. While ADP certainly has the resources to leave no stone unturned, Schwartz does not. Litigants with limited resources often must assess the cost/benefit of further discovery. Attorney Goodman chose to oppose summary judgment with the evidence on hand rather than chase more proof. The Court cannot say that decision amounts to bad faith.

At bottom, in its considerable discretion, the Court finds that Attorney Goodman's conduct did not rise to the level required under § 1927 at any stage of these proceedings. The Court thus turns to the fee motions.

## B. ERISA Fees

ADP seeks attorney fees as the prevailing party on Schwartz's ERISA claim. To recap, Schwartz alleged that ADP violated ERISA by failing to provide notice of his right to continue health insurance coverage (COBRA) after being terminated. Without notice, Schwartz claimed he could not make an informed decision, thereby leading to a loss of health insurance. ADP successfully argued that Schwartz lacked standing to bring such a claim. (*See* Doc. 57.)

ERISA's fee-shifting provision provides:[3]

> In any action under this subchapter [ ] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). Consistent with the text, attorney's fees are not guaranteed in ERISA cases. Nor is there a presumption in favor of fees. *Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). Rather, "the

---

[3] Generally, a defendant may not recover attorney's fees under a fee-shifting statute on a claim dismissed for lack of subject-matter jurisdiction. And lack of standing is often treated as the functional equivalent of lack of subject-matter jurisdiction. *Davis v. Jackson*, 776 F. Supp. 2d 1314, 1317-18 (M.D. Fla. 2011). But here, the Court noted that whether Schwartz has statutory standing under ERISA does not implicate subject-matter jurisdiction; instead, the inquiry is whether he has a cause of action. (Doc. 57 at 5.)

court in its discretion *may* allow a reasonable attorney's fee . . . to either party." 29 U.S.C. § 1132(g)(1) (emphasis added).[4]

The Supreme Court has said attorney's fees are appropriate under ERISA if the moving party obtained "some degree of success on the merits." *Hardt*, 560 U.S. at 245. Once this threshold is crossed, whether to award fees becomes a matter of discretion. *Id.* at 255 n.8; *see also Cross v. Quality Mgmt. Grp., LLC*, 491 F. App'x 53, 55 (11th Cir. 2012). Courts have developed a five-factor test to guide this analysis:

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1485 (11th Cir. 1995).

---

[4] ADP argues for fees under ERISA as the "prevailing party," but the Supreme court rejected that label as absent from § 1132(g)(1)'s plain text. *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 244-45 (2010) ("We hold instead that a court in its discretion may award fees and costs to either party, as long as the fee claimant has achieved some degree of success on the merits."). Thus, prevailing party precedents do not govern the availability of fee awards under § 1132(g)(1). *Id.* at 253.

These factors lay "down the proper markers to guide a court in exercising the discretion that § 1132(a)(1) grants." *Hardt*, 560 U.S. at 255. But "[n]o single factor is necessarily outcome-determinative." *Waschak v. The Acuity Brands, Inc. Senior Mgmt. Benefit Plan*, 384 F. App'x 919, 924 (11th Cir. 2010). And a reviewing court need not "abandon historic fee-shifting principles [or] intuitive notions of fairness." *Hardt*, 560 U.S. at 255.

There is no dispute that ADP achieved success on the merits—Schwartz's ERISA claim was dismissed with prejudice. *Vinson v. Koch Foods of Ala., LLC*, 12 F.4th 1270, 1278 (11th Cir. 2021) ("[D]ismissals with prejudice, even voluntarily, are adjudications on the merits[.]"). What remains for adjudication, then, is whether ADP should recover fees under the remaining factors.

### i.   Bad Faith and Merits

ADP's arguments as to the first and fifth factors are the same—Schwartz's ERISA claim was meritless and brought in bad faith. (*See* Doc. 141.) According to ADP, "Schwartz's complaints [were] packed with pages of irrelevant allegations and reams of exhibits which only exist to provide [him] with a litigation-privileged soapbox to vent all of his hacking theories . . . and then [he] add[ed] the ERISA claim to seal his theme of victimhood." (*Id.* at 12.)

The Court is not convinced. Although ADP ultimately prevailed, Schwartz's conduct does not meet the bad-faith standard because existing

Eleventh Circuit precedent provided him with at least an arguable ERISA claim. *See DeBene v. BayCare Health Sys., Inc.*, 688 F. App'x 831 (11th Cir. 2017). The claim in *DeBene* was similar to Schwartz's—that a former employer violated COBRA by failing to provide notice of his right to continue healthcare coverage following his termination. The court noted that if an employer fails to provide such notice, the employee may file a civil action to enforce his rights. *Id.* at 839. That is what Schwartz alleged here. And whether the employer met its obligations under COBRA was a factual issue that made it to summary judgment. *See Robles v. Lowe's Home Centers, LLC*, No. 8:19-cv-2713-T-02AAS, 2020 WL 1027592, at *2 (M.D. Fla. Mar. 3, 2020) (finding that whether an employer provided COBRA notice was a factual issue that survives a standing challenge).

ADP separately argues that Schwartz acted in bad faith by continuing to pursue the ERISA claim even after being told he lacked standing. (Doc. 141 at 4 ("Each time the Court dismissed Schwartz's ERISA counts, this Court gave Schwartz clear instructions on what he needed to amend. Schwartz did not have the legal or factual basis to meet the Court's standards but amended his complaints several times anyhow[.]")) The Court cannot endorse this argument either. Whether Schwartz has standing is far from settled law. There is no Eleventh Circuit decision on point, and several other circuits have recognized exceptions to ERISA's standing requirements that could apply here. *See, e.g.*,

*Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 561 (6th Cir. 2017) (finding standing where the claimants had been employees at the time of the alleged ERISA violation); *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir. 1995) (finding that a plaintiff has ERISA standing if he would be a plan participant "but for the employer's conduct alleged to be in violation of ERISA"). Against this backdrop, the Court declines to find that Schwartz acted in bad faith or brought frivolous claims.

### ii.   Ability to Pay

As for the second factor, this issue was hardly addressed by the parties. Schwartz simply claims he cannot pay, and ADP argues that Schwartz's scorched-earth approach to the state-court litigation means he must have funds to satisfy a fee award.[5] ADP requests limited discovery on Schwartz's ability to pay. That request should be denied because, even assuming Schwartz has financial resources, that fact would not outweigh the other factors that cut against a fee award.

---

[5] ADP also requests that the Court take judicial notice of Schwartz's extensive litigation in state court to illustrative his financial capacity. (Doc. 155.) A court may judicially notice a fact "at any stage of a case and on its own" if the fact "cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)-(d). Judicial notice of state court records is generally appropriate on the latter ground. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-52 (11th Cir. 2020) (observing judicial notice about a state case from the state court's database generally is appropriate). Even so, the Court finds judicial notice unnecessary given it assumes that Schwartz can pay.

### iii.    Deterrence, Benefit to Others, Significant Legal Question

The third and fourth factors, which concern deterrence and significance of the dispute, do not support a fee award. A dismissal with prejudice is enough of a deterrence here. *See Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-Civ-23425-Cooke/Torres, 2018 WL 1883086, at * 5 (S.D. Fla. Jan. 26, 2018) ("[P]laintiff's conduct has already been sanctioned in the form of dismissal with prejudice. . . . We, therefore, conclude that any additional deterrence in the form of a fee award is not necessary to deter similar conduct in the future[.]"). And the Court decided no significant legal question.

In conclusion, after considering the relevant factors, the Court should deny ADP's request for attorney's fees under 29 U.S.C. § 1132(g)(1).

### C. FDUTPA Fees

"Under FDUTPA, the Florida Legislature has declared that deceptive or unfair methods of competition and practices in trade and commerce are unlawful." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013). "To encourage citizens to invoke the protections of FDUTPA and file actions under that statute, the Legislature has provided that a prevailing party in a FDUTPA action may recover reasonable costs and attorney's fees from the nonprevailing party." *Id.*

FDUTPA's fee-shifting provision states: "In any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party

. . . may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1). Like above, FDUTPA does not mechanically award fees to the prevailing party. "[T]he award of fees and costs [is] a matter committed solely to the discretion of the trial court." *Colomar v. Mercy Hosp., Inc.*, No. 05-22409-CIV-SEITZ, 2008 WL 4459383, at *2 (S.D. Fla. Sept. 29, 2008). After determining that a party prevailed under FDUTPA, the court has discretion to award attorney's fees based on several equitable factors:

    (1) the scope and history of the litigation;

    (2) the ability of the opposing party to satisfy an award of fees;

    (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

    (4) the merits of the respective positions – including the degree of the opposing party's culpability or bad faith;

    (5) whether the claim brought was not in subjective bad faith but was frivolous, unreasonable or groundless;

    (6) whether the defense raised a defense mainly to frustrate or stall; and

    (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Humane Soc'y of Broward Cnty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971 (Fla. 4th DCA 2007). This list is non-exclusive, and an award for fees or costs is ultimately discretionary. *See Day v. Sarasota Doctors Hosp., Inc.*, No. 8:19-cv-1522-VMC-TGW, 2021 WL 7450526, at *3 (M.D. Fla. Aug. 12, 2021).

One last point bears mentioning. The Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Keeping with this approach, a district court need not parrot a lengthy discussion of every discretionary factor it has considered. *See Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1269 (11th Cir. 2008) ("We hesitate to require the district court to do more than . . . list the factors and conclude that they do not favor an award of fees.").

Many of the *Humane Society* factors are neutral or favor Schwartz for the same reasons discussed above with ERISA. For example, with respect to deterrence, the Court is not persuaded that an award of attorney's fees would deter others from acting in similar circumstances. Schwartz's FDUTPA claim was dismissed with prejudice. Other courts have similarly found this to be enough and have refused to award additional deference in the form of a fee award. *See, e.g.*, *Atmos Nation, LLC v. All Rise Recs., Inc.*, No. 16-60032-CIV, 2017 WL 3635114, at *4 (S.D. Fla. July 6, 2017). ADP's request for fees essentially turns on the first, fourth, and fifth *Humane Society* factors. These are addressed in turn below.

### i.   The Scope and History of Litigation

The first *Humane Society* factor focuses on the scope and history of the litigation to determine whether fees should be awarded. ADP argues that Schwartz "baselessly perpetuated and extended the scope of litigation" by filing

26

a frivolous FDUTPA claim. (Doc. 150 at 18.) And when the Court told Schwartz

why FDUTPA did not apply, he "made no attempt to cure" the deficiencies. (*Id.*

at 12.) He instead "made the same empty arguments to perpetuate litigation"

through three amended complaints. (*Id.* at 13.)

To be sure, Schwartz aggressively litigated the FDUTPA claim despite it

having no clear application here. Still, there is little evidence that this strategy

"unreasonably multiplied . . . the expenses" such that fees should be awarded.

*Colomar*, 2008 WL 4459383, at *2. This is not a case in which Schwartz

multiplied the litigation by carrying a baseless claim through summary

judgment or trial. ADP successfully moved to dismiss the FDUTPA claim. And

while it admittedly took several attempts, ADP largely parroted the same

arguments each time. The overwhelming majority of this dispute instead

involved Schwartz's non-FDUTPA claims. Accordingly, the Court finds that

this factor weighs against ADP.

### ii.   The Merits

The fourth factor to consider is the merits of the parties' litigation

positions. The Court finds this factor supports a fee award. Every iteration of

the complaint suffered from the same basic deficiencies—Schwartz failed to

allege how ADP engaged in a deceptive or unfair practice, how those specific

practices caused him to suffer damages, or the actual damages suffered. As

explained above, the deceptive and unfair conduct alleged throughout Schwartz's complaint simply had no connection with trade or commerce.

### iii.   Whether Plaintiff's Claims were Frivolous or Unreasonable

Under the fifth *Humane Society* factor, ADP contends that fees are appropriate because Schwartz's FDUTPA claim was frivolous, unreasonable, and groundless. According to ADP, "Schwartz never had any factual basis for his claims and never seriously pursued any effort to find such a basis." (Doc. 150 at 21.)

Without being repetitive of the reasons explained above, the record does not indicate that Schwartz proceeded in bad faith, or for that matter, knowingly asserted groundless claims. While Schwartz and his counsel may have been misguided on the state of the law, the Court declines to find that this factor weighs in favor of ADP.

In sum, after a thorough consideration of the seven factors enumerated in *Humane Society* and the arguments presented, the Court finds that a fee award is not needed here. Dismissal of Schwartz's FDUTPA claim as a matter of law (alongside costs taxed against him (Doc. 146)) provides enough deterrence for others who may bring such claims. Moreover, the Court is not convinced that Schwartz pursued his FDUTPA claim in bad faith as opposed to mere negligence. While Schwartz was ultimately wrong on the state of the law and whether FDUTPA applied to these facts, this misapplication of the law

28

does not warrant imposing a fee award with all other things considered. ADP's motion for fees and costs under FDUTPA should therefore be denied.

Accordingly, it is hereby **ORDERED:**

Defendants' Motion for Attorney's Fees Under 28 U.S.C. § 1927 and the Court's Inherent Authority (Doc. 137) is **DENIED**.

It is further **RECOMMENDED:**

1.     Defendants' Motion to Determine Entitlement to Reasonable Statutory Attorney's Fees Under ERISA (Doc. 141) be **DENIED**.

2.     Defendants' Motion for Leave to Conduct Limited Discovery (Doc. 149) be **DENIED**.

3.     Defendants' Motion to Determine Entitlement to Reasonable Statutory Attorney's Fees Under FDUTPA (Doc. 150) be **DENIED**.

4.     Defendants' Motion for Judicial Notice (Doc. 155) be **DENIED**.

**Entered** in Fort Myers, Florida on March 21, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:   All Parties of Record

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure

to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.